UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-CV-00027-KSF

FREDERICK BRADLEY NOWELL, SR.    PLAINTIFF

VS:    **MEMORANDUM OPINION AND ORDER**

DEBORAH HICKEY, *Warden*    DEFENDANT

Plaintiff Frederick Bradley Nowell, Sr., proceeding *pro se*, has filed a "Motion for Emergency Injunctive Relief to Compel Medical Treatment," R. 2.[1] Nowell seeks an order directing the defendant, FMC-Lexington Warden Deborah Hickey, to arrange for him to be provided with immediate and proper medical treatment for an alleged cancer condition. For the reasons set forth below, the Court will deny Nowell's motion without prejudice to his filing another action seeking future emergency injunctive relief in the event of changed circumstances.

**ALLEGATIONS OF THE MOTION**

Nowell states that since 2009, he has had a growth on his right leg. In March 2010, he submitted an "Inmate Request to Staff" Form seeking treatment. R. 2, p. 2. Around April 2010, a dermatologist at the University of Kentucky Medical Center ("UKMC") examined him. In December 2010, Angel Cordero, a physician at FMC-Lexington, performed a biopsy on the growth and informed Nowell that the growth was cancerous. Nowell states that since Dr.

---

[1] Nowell is confined in Federal Medical Center-Lexington ("FMC-Lexington") located in Lexington, Kentucky. Nowell has neither paid the filing fee nor sought *in forma pauperis* status. A separate Order will be entered directing Nowell either to pay the $350.00 filing fee or submit the proper *in forma pauperis* documentation.

Cordero told him the biopsy results in early December 2010, he (Dr. Cordero) has not told him what course of treatment he will undergo. On January 3, 2011, Nowell submitted another "Inmate Request to Staff" Form to Assistant Warden Coll, requesting a schedule of "the treatment needed" R, 2-1, p. 1. Nowell states that Coll has not responded to the request.

Nowell alleges that Dr. Cordero has been aware since 2009 that he has had a growth on his leg; that Dr. Cordero unreasonably delayed having a dermatologist examine him and performing a biopsy on the growth; that Dr. Cordero and Coll have unreasonably denied his reasonable requests for medical treatment; and that Warden Hickey has had more than reasonable time to determine what treatment is required.

Nowell also claims that because he has a serious medical condition requiring immediate medical treatment, he should be excused from administratively exhausting his claims under the Bureau of Prisons' ("BOP") administrative remedy scheme, 28 C.F.R. §§ 542.13-19.[2] Nowell claims that time is of the essence, and that pursuing administrative remedies would be futile.

---

[2]  The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F.R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

## DISCUSSION

Nowell's claim falls under the Eighth Amendment of the United States Constitution which prohibits cruel and unusual punishment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state an Eighth Amendment claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). In addition, a prisoner must generally "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky*., 238 F.3d 739, 742 (6th Cir. 2001).

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). A court should consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be

advanced by issuing the injunction. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. However, the failure to show a likelihood of success on the merits is usually fatal. *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The plaintiff bears the burden of proving that an injunction is proper, *Overstreet*, 305 F.3d at 573. The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) .

Applying the first criterion to the motion, Nowell is unable *at this time* to establish a substantial likelihood of success on the merits of his Eighth Amendment claim because the Court lacks sufficient information about the extent and seriousness of his medical condition. Nowell attached no medical or laboratory reports from the UKMC or any other medical provider.

Nowell attached only: (1) a copy of his January 3, 2011 "Inmate Request to Staff" Form in which he (Nowell) states that the UKMC dermatologist recommended removal of the growth, and (2) a copy of his March 12, 2010 "Inmate Request to Staff" in which he (Nowell) stated that the dermatologist who examined him via Telemed was "very concerned" about the removal of the growth on his leg "and other places that he observed." R. 2-1, p.2. But Nowell attached no medical documentation indicating whether the allegedly cancerous growth on his leg is benign or malignant, which could be a significant distinction in deciding if an emergency injunction directing prison officials to provide medical treatment to a prisoner is warranted.

4

Further, although Nowell claims that Warden Hickey has had adequate time in which to respond to his concerns, he does not allege that he directly notified her of his concerns and demands by submitting a BP-9 "Request for Administrative Remedy." Nowell obviously did not pursue the two subsequent steps of the BOP administrative remedy process.

Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007). At least one other court in this circuit has denied a prisoner's motion for an emergency injunction seeking medications and medical treatment when it was obvious that he had not administratively exhausted his claims. *See Tolliver v. Collins*, No. 2:08-CV-00722, 2010 WL 2640061, at *2 (S.D. Ohio April 29, 2010). Because Nowell makes it clear that he has not exhausted his administrative remedies, he prematurely filed this action.

While Nowell may have thought a response to the "Inmate Request to Staff" he submitted to Associate Warden Coll was required, it was not. Nothing in 28 C.F.R. § 542.14 requires an inmate to produce written denial of a BP-8 request prior to submitting a formal grievance, a BP-9 Request for Administrative Remedy, with the Warden.[3] Nowell could have submitted a BP-9 "Request for Administrative Remedy" demanding medical treatment to Warden Hickey within

---

[3] *See* 28 C.F.R. § 542.18, which provides in relevant part as follows:

"If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

5

twenty days of the complained-of event. Coll's alleged failure to respond to the informal grievance does not prevent Nowell from submitting a BP- 9 form to Warden Hickey.

Other courts have agreed, holding that a prison official's failure to respond to informal grievances does not prevent prisoners from pursuing formal grievances. In *Red Kettle v. Lappin*, No. 08-02029, 2009 WL 2044703 (W. D. La. July 8, 2009), the district court rejected as "an improper interpretation of the administrative remedies procedures" the prisoner's argument that the prison staff's failure to respond to his informal grievances prohibited him from seeking further administrative review. *Id*. at *2. *See also Fjerstad v. Palmquist*, No. 08-00274, 2008 WL 4331633, at *3 (W.D. Wash. September 17, 2008); *Jammes v. Alachua County Jail*, No. 05-00052, 2007 WL 2826069, at * 5 (N. D. Fla. September 25, 2007) ; *Williams v. Martin*, No. 04-0377, 2006 WL 1835110, at * 5 (N. D. Ga. June 30, 2006).

Furthermore, Nowell has not alleged that he notified Warden Hickey that he considered his concerns to be of an emergency nature under 28 C.F.R. §542.18. That section provides in relevant as follows:

> If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.

Under § 542.18, Nowell could have attempted to ascertain from the Warden what, if any, medical treatment he might receive, and depending on her response, appealed to higher BOP levels if necessary. Instead, Nowell asks this Court to intervene in the BOP's handling of his health care decisions, order FMC-Lexington officials to provide medical treatment, and thus enable him to circumvent the administrative remedy process. Before a district court "undertakes

to override the prerogatives of . . .correctional authorities in the administration of any aspect of prison administration, it must assure itself that no less intrusive means of bringing about compliance with constitutional requisites is available." *Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988).

Courts have rejected prisoner's arguments that they should be excused from administratively exhausting claims alleging imminent physical danger where emergency relief under § 542.18 is available. *See Dudley v. Bureau of Prisons*, No. 08-04022, 2009 WL 775535, at *1, n.1 (D. S.D. March 24, 2009); *In re Russell*, No. 06-64, 2006 WL 897235, at *2 (E.D. Ky., April 5, 2009) (denying interferon treatment for prisoner with liver disease where he failed to utilize the emergency measures set forth in § 542.18).

Given the requirements of the exhaustion process, and the absence of both more specific medical information and an official response from Warden Hickey, Nowell can show no more that a mere possibility of success, which is insufficient to justify an emergency injunction. *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261, n.4 (6th Cir. 1977). The plaintiff must show a "strong" or "substantial" likelihood of success. *See Summit County Democratic Cent. and Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004).

For the same reasons, Nowell cannot *at this time* establish that he will suffer irreparable harm if the Court denies his motion and refuses to order Warden Hickey to provide him with medical treatment and inform him what that treatment will be. Irreparable injury is the single most important prerequisite to consider when ruling on a motion for a preliminary injunction. *See Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Lexington-Fayette Urban County*

*Gov't v. Bellsouth Telcoms., Inc.*, 14 F. App'x. 636, 639 (6th Cir. 2001). Without it, the underlying purpose for a preliminary injunction is lost.

The third factor to consider when determining if injunctive relief is warranted is whether harm would result to others if the preliminary injunction is entered. When a prisoner seeks an order enjoining prison officials, a district court is required to proceed with the utmost care, recognizing the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438 (6th Cir. 1984). Nowell has not yet submitted an administrative remedy to Warden Hickey or the higher BOP administrative levels, and he has not established a likelihood of success on the merits. Given those deficiencies, FMC-Lexington administrators would be adversely affected by an injunction directing them to provide unspecified medical treatment to Nowell.

Fourth, the interests of third parties, and the public at large, would not be served by issuing an emergency injunction. The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court has noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10 (1989). Usually, the interests of identifiable third parties and the public at large weigh against granting an injunction because judicial interference in prison administration matters is necessarily disruptive, and granting extraordinary relief measures in the prison context, absent a sufficient showing of a violation of constitutional rights, goes against the public welfare. *See Clay v. Isard*, No 09-00209, 2010 WL 565121, at *2 (W. D. Mich., February 10, 2009).

Nowell's motion for emergency injunction and for an order to compel FMC-Lexington to provide him with medical treatment will be denied without prejudice to Nowell obtaining more definitive medical documentation showing that an emergency medical condition exists; filing a request for emergency relief with Warden Hickey, thereby giving her an opportunity to respond to his demands and concerns; and receiving a response from Hickey and if necessary, the higher BOP administrative levels.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff Frederick Bradley Nowell, Sr.'s "Motion for Emergency Injunctive Relief to Compel Medical Treatment," R. 2, is **DENIED WITHOUT PREJUDICE**.

(2) A separate Order directing Nowell either to pay the $350.00 filing fee or submit the proper *in forma pauperis* documentation will be entered contemporaneously with this Memorandum Opinion and Order.

This February 1, 2011.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**